## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEWART SIELEMAN**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**FREEDOM MORTGAGE CORPORATION,** a company registered in the State of New Jersey,<br><br>*Defendant*. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CASE NO**:   17-cv-13110 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Stewart Sieleman ("Sieleman" or "Plaintiff Sieleman") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Freedom Mortgage Corporation ("FMC" or "Defendant FMC") to stop its practice of sending unwanted autodialed telephone calls to cellular telephones without consent, and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for his Complaint, allege as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Senator Hollings, the Telephone Consumer Protection Act's ("TCPA") sponsor, described robocalls as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone cord out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended telephone subscribers another option: telling the autodialers to

simply stop calling." *Osario v. State Fram Bank, F.S.B.,* 746 F.3d 1242, 1256 (11th Cir. 2014).
Thus, the TCPA was enacted to empower the private citizen and protect the privacy (and perhaps
the sanity) of consumers nationwide.

2.      Unfortunately, illegal robocalls continue to increase and further invade the
privacy of millions of consumers.  Last year, in 2016, 4 million complaints related to robocalling
were lodged with the Federal Communications Commission (the "FCC").[1]  This number is
markedly higher than the previous year, which yielded 2.6 million complaints (which rose from
the year before that).[2]  Notably, many consumers who have been subjected to illegal robocalling
activity do not report each instance of illegal robocalling activity, and the actual number of
consumers affected by illegal robocalls is significantly higher.

3.      Here, Defendant FMC is a company that specializes in refinancing consumers'
home mortgage loans.  Defendant contacts consumers using an autodialer in an attempt to solicit
their services without their consent.

4.      This case addresses FMC's repeated pattern and practice of calling consumers on
their cell phones using an autodialer who have no not provided FMC with their prior express
written consent.  Defendant conducted (and continues to conduct) a wide-scale solicitation

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 - September 30, 2016,* FEDERAL TRADE
COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-
book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data - Unwanted Calls, FCC -
Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-
Government-Affairs/Consumer-Complaints-Data-Unwated-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015,* FEDERAL TRADE COMMISSION (Nov. 2015),
https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-
2015/dncdatabookfy2015.pdf: *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL
COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-
Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers
Against Unwanted Robocalls, Texts to Wireless Phones,* FEDERAL COMMUNICATIONS COMMISSION,
https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY
2014,* FEDERAL TRADE COMMISSION (Nov. 2014),
https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-
2014/dncdatabookfy2014.pdf.

campaign that features the repeated making of unwanted autodialed phone calls to consumers' cellular telephones without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

5.      The TCPA was enacted to protect consumers from autodialed telephone calls like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease all autodialed telephone calling activities to cellular telephones without first obtaining prior express consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

6.      As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

7.      Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to place solicitation phone calls to consumers' cellular telephone numbers.

## COMMON ALLEGATIONS

8.      Defendant places autodialed telephone calls to consumers' cellular telephones in an attempt to solicit their business and to promote its mortgage-lending and refinancing services.

9.      In sending these solicitation phone calls, Defendant takes no steps to acquire the oral or written prior express written consent of the Plaintiff, or the Class Members who received them.

10.     Defendant placed, or had placed on its behalf, telephone calls *en masse* to thousands of cellular telephone numbers throughout the United States.

11.     In placing the solicitation telephone calls at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant or its agent has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of placing numerous telephone calls simultaneously (all without human intervention).

12.     In fact, Defendant advertises its use of automated technology on its very own website.  There, Defendant explicitly states that it may use automated technology to contact consumers.  The image below is taken from https://www.freedommortgage.com.

By clicking "submit", you are providing Freedom Mortgage with your express consent to be contacted through automated means such as autodialing, text SMS/MMS (charges may apply), and prerecorded messaging, even if your telephone number or cellular phone number is on a corporate, state, or the National Do Not Call Registry. Providing your consent for contact does not require you to select Freedom Mortgage Corporation for your mortgage. By communicating with us by phone, you consent to calls being recorded and monitored.

You may also receive marketing/promotional emails from us.

13.     The above image reads, "[b]y clicking "submit," you are providing Freedom Mortgage with your express consent to be contacted through automated means such as autodialing, text SMS/MMS (charges may apply), and prerecorded messaging …"

14.     FMC published a job posting seeking employees that have autodialing experience.

4

**Essential Job Functions:**

- Serve as subject matter expert in telephony technology, specifically outbound dialer functionality and optimization
- Identify and execute short and long-term strategy adjustments or enhancements to drive contact center performance
- Must have experience with call center and financial reporting, key performance indicators, and website and telephony applications
- Ability to create, deliver and analyze reports using Business Objects or other relational database extraction tools
- Ability to extract, summarize, and utilize data from varied sources, providing data-driven recommendations to business units and stakeholders
- Ensure all investor requirements are met while remaining within compliance of all statutory and regulatory obligations
- Provide guidance and day to day support for the Servicing Group including technical support
- Acts as a first contact for business system issues
- Experience participating in successful projects with cross functional teams and departments
- Must be able to work independently
- High attention to detail and organizational skills
- Ability to work a flexible schedule outside of typical business hours

15.     The essential job functions include to "[s]erve as subject matter expert in telephony technology, specifically outbound dialer functionality and optimization."

16.     In addition, a disgruntled employee wrote on glassdoor.com about her experience working for Freedon Mortgage  as "Inbound Leads are TERRIBLE!! They come from an autodialer making 'ringlesss calls' to people that DON'T even OWN HOMES, NOR DO THEY WANT TO PURCHASED A HOME."[3]

17.     Defendant was and is aware that its unsolicited telephone calls were and are being placed to consumers without their prior express written consent.

18.     Defendant knowingly placed (and continues to place) unsolicited telephone calls to cellular telephones without the prior express written consent of the recipients.  In so doing, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

19.     Consumers have gone online to voice their complaints and to warn others:

---

[3] https://www.glassdoor.com/Reviews/Freedom-Mortgage-Reviews-E346796_P5.htm

- They will not quit calling me although every time they call me I ask them to never call me again.  I told them if they called me again I would get a new mortgage company.  Now they call and ask me not to switch."[4]
- We have one mortgage with them.  They have been told MULTIPLE times to stop calling for re-finance or other methods to take cash out of home value.  They continue to call from multiple numbers.  We have no decided to block ALL their calls.  If they want to reach us for legitimate reasons, they have both mailing and emailing addresses.[5]
- Called me at work to ask me to refinance…unprofessional … Also, please know that calling work phone numbers to solicit business in extremely unprofessional.[6]

20.     Accordingly, by placing the unsolicited telephone calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such telephone calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

21.     Upon information and belief, and via investigation by Plaintiff's attorneys, each of the telephone calls placed to Plaintiff and the Classes are affiliated with Defendant.

22.     In response to Defendant's unlawful conduct; Plaintiff files this action seeking an injunction requiring Defendant to cease all unwanted solicitation text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

---

[4] https://www.yelp.com/biz/freedom-mortgage-virginia-beach.

[5] https://800notes.com/Phone.aspx/1-855-690-5900.

[6] *Id.*

6

## PARTIES

23.     Plaintiff Stewart Sieleman is a natural person and resident of St. Cloud, Minnesota.

24.     Defendant Freedom Mortgage Corporation is a company with its headquarters located at 907 Pleasant Valley Avenue, Suite 3, Mt. Laurel, New Jersey 08054.  Defendant conducts business throughout this District, the State of New Jersey, and the United States.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

26.     This Court has personal jurisdiction over Defendant because Defendant does significant business in the State of New Jersey, in this District, and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conduct a significant amount of business in this District and the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Defendant resides in this District.

## FACTS SPECIFIC TO PLAINTIFF SIELEMAN

28.     In 2015, Defendant FMC acquired Plaintiff Sieleman's home mortgage from his previous mortgage lender Bell Bank Mortgage.

29.     Within a few months of being informed that his mortgage was transferred to FMC, Plaintiff began to receive auto-dialed calls to his cellular phone, encouraging him to refinance his mortgage with FMC.

7

30.     When Sieleman would answer these calls, he would hear a noticeable pause/delay.  This artificial pause/delay is indicative of the use of an ATDS.   Sieleman has answered approximately four (4) calls.

31.     Sieleman has requested that FMC stop calling him twice. Despite these requests, the auto-dialed calls to his cell phone continued.

32.     During one of these calls from FMC, when Sieleman spoke to an agent to find out if the calls were legitimate, he was transferred to one of FMC's agents, who confirmed that Sieleman was already receiving the best rate and could not get a refinanced mortgage if he wanted one.  Sieleman again asked FMC's agent to to stop calling him at the end of the call.

33.     On September 14, 2017, FMC attempted to contact Sieleman in an effort to solicit his business, despite the two stop-call requests that he made.  Sieleman did not answer and FMC left a message on his voicemail.  FMC's agent stated that the purpose of the call was to refinance Sieleman's loan.

34.     Sieleman has never provided his telephone number directly to FMC, or requested that FMC place solicitation telephone calls to him or alert him of its services.  Simply put, Sieleman has never provided his prior express written consent to FMC to place solicitation telephone calls to him.

35.     By sending unauthorized telephone calls as alleged herein, FMC has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the autodialed calls disturbed Sieleman's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Sieleman's phone. In the present case, a consumer could be subjected to many

unsolicited autodialed calls, as FMC fails to obtain a consumers' prior express written consent before sending them solicitation telephone calls.

36.     In order to redress these injuries, Sieleman, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice calls to cellular telephones.

37.     On behalf of the proposed Classes, Plaintiff seeks an injunction requiring FMC to cease all unwanted autodialed calling activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following four Classes:

> **Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, (3) for the purpose of selling Defendant's products and/or services, (4) using an automated telephone dialing system, and (5) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

> **Autodialed Stop Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and/or services, (4) using an automated telephone dialing system, (4) after the person informed Defendant that s/he no longer wished to receive text messages from Defendant.

39.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipate the need to amend the Class definitions following appropriate discovery.

40.     On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

41.     There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes that may be answered in a single stroke include, but are not necessarily limited to the following:

(a) whether Defendant's conduct constitutes a violation of the TCPA;

(b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

(d) whether Defendant obtained prior express written consent to contact any Class members; and

(e) to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

42.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages

as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the solicitation text messages alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting solicitation text messages. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like all members of the Classes, received unwanted autodialed telephone calls from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of themselves and all absent members of the Classes.

43.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interests antagonistic to the interests of other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

44.     The suit may be maintained as a class action under the Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  As the messages continue to be sent in spite of Defendant's failure to get the consumers' prior express written consent to receive the text messages, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unauthorized solicitation text messages.  Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members

of the Classes in transmitting the wireless solicitation text messages at issue, requiring the

Court's imposition of uniform relief to ensure compatible standards of conduct toward the

Classes.

45.    In addition, this suit may be maintained as a class action under Federal Rule of

Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the

fair and efficient adjudication of this controversy. Absent a class action, most members of the

Classes would find the cost of litigating their claims to be prohibitive, and will have no effective

remedy. The class treatment of common questions of law and fact is also superior to multiple

individual actions or piecemeal litigation in that it conserves the resources of the courts and the

litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are

applicable to all customers throughout the United States who received an unsolicited solicitation

text message from Defendant. The injury suffered by each individual class member is relatively

small in comparison to the burden and expense of individual prosecution of the complex and

extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for

members of the Classes individually to redress effectively the wrongs done to them. Even if the

members of the Classes could afford such litigation, the court system could not. Individualized

litigation increases the delay and expense to all parties, and to the court system, presented by the

complex legal and factual issues of the case. By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court.

46.    Adequate notice can be given to the members of the Classes directly using

information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act

**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed No Consent Class)**

47.     Plaintiff repeats and realleges by reference paragraphs 1-40 of this Complaint and incorporates them herein by reference.

48.     Defendant and/or its agents agent transmitted unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention. The telephone dialing equipment utilized by Defendants and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

49.     These solicitation telephone calls were made *en masse* without human intervention and without the prior express written consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation telephone calls.

50.     At no time did Defendant obtain prior express written consent from the Plaintiff orally or in writing to receive solicitation telephone calls. Also, at no time did Defendant obtain prior express written consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive solicitation telephone calls was not a condition of the purchase of any property or service.

51.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are

each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

52.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed Stop Class)**

53.     Plaintiff incorporate and realleges by reference paragraphs 1-40 as if fully set forth herein.

54.     Defendant placed unsolicited and unwanted telephone calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class on their cellular telephones after they had demanded that Defendant stop calling them.

55.     Defendant placed the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called and/or texted using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

56.     Defendant utilized equipment that placed the telephone calls to Plaintiff and other members of the Autodialed Stop Class simultaneously and without human intervention.

57.     By placing unsolicited telephone calls to Plaintiff and other members of the Autodialed Stop Class's cellular telephones using an automated telephone dialing system after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent.

58.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

59.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, pray for the following relief:

60.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes and appointing his attorneys as Class Counsel;

61.     An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

62.     An order declaring that Defendant's actions, as set out above, violate the TCPA.

63.     A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

64.     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

65.     An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;

66.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

67.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

68.     Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEWART SIELEMAN**, individually and on behalf of Classes of similarly situated individuals

Dated: December 14, 2017                     By:   /s/Stefan Coleman
                                                          One of Plaintiff's Attorneys

                                                  Stefan Coleman
                                                  law@stefancoleman.com
                                                  LAW OFFICES OF STEFAN COLEMAN, P.A.
                                                  1072 Madison Ave. #1
                                                  Lakewood, NJ 08701
                                                  Telephone: (877) 333-9427
                                                  Facsimile: (888) 498-8946