UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEWART SIELEMAN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**FREEDOM MORTGAGE CORP.,** a company registered in the State of New Jersey<br><br>*Defendant.* | Civil Action No. 1:17-cv-13110<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

I. STATUTORY BACKGROUND ..................................................................................1

II. FACTS ..........................................................................................................................2

III. CLAIMS .......................................................................................................................5

IV. ARGUMENT................................................................................................................7

    A. Standard of Review..........................................................................................7

    B. Pleadings Respecting Absence of Consent Do Not Provide a Basis for Dismissal.............................................................................................................8

    C. The Complaint Properly Alleges That the Calls Were "Telemarketing" ..................10

    D. Plaintiff Adequately Alleges The Use Of An Automatic Telephone Dialing System ..............................................................................................12

V. CONCLUSION..........................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Abella v. Student Aid Ctr., Inc.*,
  2015 WL 6599747 (E.D. Pa. Oct. 30, 2015)..................................................................12

*ACA International v. FCC*, -- F.3d --,
  2018 WL 1350922 (D.C. Cir. March 16, 2018)..............................................................1

*Accounts Receivable Mgmt.*,
  2013 WL 4047577 (D.N.J. Aug 9, 2013) .....................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................7, 8, 13

*Connelly v. Hilton Grant Vacations Co., LLC*,
  2012 WL 2129364 (S.D. Cal. June 11, 2012)..............................................................13

*Daubert v. NRA Group, LLC*,
  861 F.3d 382 (3d Cir. 2017)...........................................................................................9

*Douek v. Bank of America*,
  2017 WL 4882492 (D.N.J. Oct. 30, 2017)..............................................................12, 14

*Erickson v. Pardus*,
  551 U.S. 89 (2007).........................................................................................................7

*Evans v. Nat'l Auto Div., L.L.C*,
  2016 WL 885050 (D.N.J. Mar. 8, 2016)................................................................13, 14

*Gross v. Weinstein, Weinburg & Fox, LLC*,
  123 F. Supp. 3d 575 (D. Del. 2015).............................................................................12

*Hart v. Medtronic, Inc.*,
  2017 WL 5951698 (D.N.J. Nov. 30, 2017) ...................................................................8

*Iniguez v. The CBE Grp.*,
  969 F. Supp. 2d 1241 (E.D. Cal. 2013)........................................................................12

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014)............................................................................12

*Leyse v. Bank of America*,
  804 F.3d 316 (3d Cir. 2015)...........................................................................................9

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ............................................................................................ 10

*Oliver v. DirecTV, LLC*,
  2015 WL 1727251 (N.D. Ill. Apr. 13, 2015) ......................................................................... 13

*Osario v. State Farm Bank, F.S.B.*,
  746 F.3d 1242 (11th Cir. 2014) .............................................................................................. 1

*Philips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) .............................................................................................. 8, 13

*Richardson v. Verde Energy USA*,
  2016 WL 7380878 (E.D. Pa. Dec. 19, 2016) .......................................................................... 6

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ................................................................................................ 8, 9

*Shupe v. JP Morgan Chase*,
  2012 WL 1344820 (D. Ariz. March 14, 2007) ..................................................................... 11

*VanPatten v. Vertical Fitness Group*,
  847 F.3d 1037 (9th Cir. 2017) ........................................................................................... 9, 11

*Worldcom, Inc. v. Graphnet, Inc.*,
  343 F.3d 651 (ed Cir. 2002) ................................................................................................ 8, 9

**STATUTES**

47 U.S.C. § 227 ............................................................................................................................. 2

47 U.S.C. § 227(a)(1) .................................................................................................................. 12

47 U.S.C. § 227(b)(1)(A) .............................................................................................................. 6

47 U.S.C. § 227(b)(1)(C)(1) ........................................................................................................ 11

47 U.S.C. § 227(b)(3) .................................................................................................................... 6

47 U.S.C. § 227(c)(1) .................................................................................................................... 6

47 U.S.C. § 227(c)(5) .................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 8(a)(2), ............................................................................................................7

Fed. R. Civ. P. 8(b)(1)(A) ........................................................................................................8

Fed. R. Civ. P. 12(b)(6) ......................................................................................................7, 8

Fed. R. Civ. P. 15(a)(2) ..........................................................................................................14

**REGULATIONS**

64 C.F.R. §1200 ......................................................................................................................2

64 C.F.R. §1200(a)(1) ............................................................................................................6

64 C.F.R. §1200(a)(2) ............................................................................................................6

64 C.F.R. §1200(d)(3) and (e) ..............................................................................................6

64 C.F.R. §1200(f)(12) ........................................................................................................11

**OTHER**

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 (Jan. 4, 2008) ..............................................................................10

*Matter of Group M, Inc. I Skype Communications,*
   29 FCC Rcd. 3442 (March 27, 2014) ..............................................................................10

Defendant Freedom Mortgage Corp. ("FMC") seeks dismissal on the basis of an affirmative defense it has not pleaded, and asks the Court to reject factual pleadings it has not answered. This case should proceed to discovery and trial. FMC's request for stay has been mooted by the recent ruling in *ACA International v. FCC*, -- F.3d --, 2018 WL 1350922 (D.C. Cir. March 16, 2018).

## I.   STATUTORY BACKGROUND

Senator Hollings, the Telephone Consumer Protection Act's ("TCPA") sponsor, described robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone cord out of the wall." 137 Cong. Rec. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014). Thus, the TCPA was enacted to empower the private citizen and protect the privacy (and perhaps the sanity) of consumers nationwide. Class Action Complaint, Dkt. 1, ¶ 1 ("¶" references refer to the Class Action Complaint).

Unfortunately, illegal robocalls continue to increase and further invade the privacy of millions of consumers. In 2016, 4 million complaints related to robocalling were lodged with the Federal Communications Commission (the "FCC"). Notably, many consumers who have been subjected to illegal robocalling activity do not report each instance of illegal robocalling activity, and the actual number of consumers affected by illegal robocalls is significantly higher. ¶ 2.

FMC is a company that specializes in refinancing consumers' home mortgage loans. FMC contacts consumers using an autodialer in an attempt to solicit their services without their consent. ¶ 3. This case addresses FMC's repeated pattern and practice of calling consumers on their cell phones using an autodialer who have not provided FMC with their prior express written consent.

1

FMC conducted (and continues to conduct) a wide-scale solicitation campaign that features the repeated making of unwanted autodialed phone calls to consumers' cellular telephones and continuing to call consumers after they have requested that the calls cease, without consent, all in violation of the TCPA, 47 U.S.C. § 227, and regulations promulgated thereunder, 64 C.F.R. § 1200.

In response to FMC's unlawful conduct, Plaintiff Stewart Sieleman filed this class action lawsuit seeking injunctive relief, requiring it to cease all autodialed telephone calling activities to cellular telephones without first obtaining prior express consent and to cease all calls to consumers who have requested that the calls stop, as well as an award of statutory damages to the members of the proposed Classes, costs, and reasonable attorney's fees. ¶5. A related class action lawsuit making similar allegations against FMC is pending before this Court. *Somogyi v. Freedom Mortgage Corp.*, No. 1:17-cv-0656-JBS-JS. *Pro hac* counsel for Sieleman has also entered an appearance in that case.

## II.  FACTS

FMC is a large mortgage lender based in this district that places autodialed telephone calls to consumers' cellular telephones in an attempt to solicit their business and to promote its mortgage-lending and refinancing services. ¶ 8.

In placing these solicitation phone calls, FMC takes no steps to acquire the oral or written prior express written consent of the Plaintiff, or the Class Members who received them. ¶ 9.

FMC placed, or had placed on its behalf, telephone calls *en masse* to thousands of cellular telephone numbers throughout the United States. ¶ 10.

In placing the solicitation telephone calls at issue in this Complaint, FMC utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by FMC or its agent has the capacity to store, produce, and dial random or sequential numbers, and/or

receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. FMC's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of placing numerous telephone calls simultaneously (all without human intervention). ¶ 11.

In fact, FMC advertises its use of automated technology on its very own website at this time. There, FMC explicitly states that it may use automated technology to contact consumers. The image below, which Sieleman had not seen and was not aware of at the times he was called by FMC, is taken from https://www.freedommortgage.com.

> By clicking "submit", you are providing Freedom Mortgage with your express consent to be contacted through automated means such as autodialing, text SMS/MMS (charges may apply), and prerecorded messaging, even if your telephone number or cellular phone number is on a corporate, state, or the National Do Not Call Registry. Providing your consent for contact does not require you to select Freedom Mortgage Corporation for your mortgage. By communicating with us by phone, you consent to calls being recorded and monitored.
>
> You may also receive marketing/promotional emails from us.

¶ 12.

The above image reads, "[b]y clicking "submit," you are providing Freedom Mortgage with your express consent to be contacted through automated means such as autodialing, text SMS/MMS (charges may apply), and prerecorded messaging …" ¶ 13.

FMC published a job posting seeking employees that have autodialing experience.

3

**Essential Job Functions:**

- Serve as subject matter expert in telephony technology, specifically outbound dialer functionality and optimization
- Identify and execute short and long-term strategy adjustments or enhancements to drive contact center performance
- Must have experience with call center and financial reporting, key performance indicators, and website and telephony applications
- Ability to create, deliver and analyze reports using Business Objects or other relational database extraction tools
- Ability to extract, summarize, and utilize data from varied sources, providing data-driven recommendations to business units and stakeholders
- Ensure all investor requirements are met while remaining within compliance of all statutory and regulatory obligations
- Provide guidance and day to day support for the Servicing Group including technical support
- Acts as a first contact for business system issues
- Experience participating in successful projects with cross functional teams and departments
- Must be able to work independently
- High attention to detail and organizational skills
- Ability to work a flexible schedule outside of typical business hours

¶ 14.

The essential job functions include to "[s]erve as subject matter expert in telephony technology, specifically outbound dialer functionality and optimization." ¶ 15.

In addition, a disgruntled employee wrote on glassdoor.com about her experience working for Freedom Mortgage as "Inbound Leads are TERRIBLE!! They come from an autodialer making 'ringlesss calls' to people that DON'T even OWN HOMES, NOR DO THEY WANT TO PURCHASED A HOME." ¶ 16.

FMC knowingly placed (and continues to place) unsolicited telephone calls to cellular telephones without the prior express written consent of the recipients. In so doing, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA. ¶ 18.

Accordingly, by placing the unsolicited telephone calls at issue in this Complaint, FMC caused Sieleman and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such calls, a loss of value realized for the monies consumers paid to their carriers for

the receipt of such telephone calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms. ¶ 20.

In response to FMC's unlawful conduct, Sieleman files this action seeking an injunction requiring it to cease all unwanted solicitation text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees. ¶ 22.

Sieleman had a home mortgage from Bell Bank Mortgage, which was assigned to FMC in 2015. ¶28. Sieleman had not had any prior business or communication with FMC. He never provided his telephone number to FMC, or requested that FMC place solicitation calls to him. ¶36.

After the assignment of the mortgage, Sieleman began to receive auto-dialed calls to his cellphone, encouraging him to refinance his mortgage with FMC. ¶29.

When Sieleman answered these calls he would hear a noticeable paused delay, indicative of the use of an Automatic Telephone Dialing System (ATDS). He has answered approximately four of these calls. ¶30.

Sieleman requested that FMC stop calling him twice. Nonetheless, the calls continued after his request ¶¶31-32. The most recent call occurred on September 14, 2017. ¶33.

### III. CLAIMS

The Complaint pleads two different claims, on behalf of different but overlapping putative classes, based on different statutory and regulatory subsections, and requiring different elements of proof and permitting different statutory defenses. ¶ 38. First, Sieleman alleges that he had been called on his cell phone without his consent. ¶¶ 48-52. The "no consent" claim requires a plaintiff to plead, and ultimately prove:

5

    (1)    That he received a call from the defendant on a number assigned to a cellular telephone service; and

    (2)    That had originated from an Automatic Telephone Dialing System ("ATDS").

There are two statutory defenses:

    (1)    That the call was for emergency purposes; and

    (2)    That the caller had provided express consent to receive the call.

47 U.S.C. 227(b)(1)(A); 64 C.F.R. §1200(a)(1).

Damages for violations of this subsection are set at $500 per violation, and $1,500 per willful violation. 47 U.S.C. § 227(b)(3). A plaintiff need not demonstrate that such a call was for telemarketing or solicitation purposes; a call for *any* non-emergency purpose triggers the statute. *ACA International*, at *6 ("the statute generally bars the use of an ATDS to make any call without prior express consent; discussing potential application to party invitations). If the call is made for telemarketing purposes, the defense of "express consent" is unavailable, a more limited defense of "express written consent" remains. 64 C.F.R. §1200(a)(2).

Plaintiff also alleges that he was called by FMC after he requested that such calls cease. ¶¶ 54-58. The "stop call" claims has three elements:

    (1)    That the call was made for "telemarketing purposes";

    (2)    That the recipient had requested that calls cease; and

    (3)    That the call was placed to either a residential or cellular telephone number.

47 U.S.C. §227(c)(1); 64 C.F.R. §1200(d)(3) and (e).

Damages for violations of this subsection are set by 47 U.S.C. § 227(c)(5). The use of an ATDS is *not* an element of the "stop call" claim. *Richardson v. Verde Energy USA*, 2016 WL 7380878 at *5 (E.D. Pa. Dec. 19, 2016) ("The Defendant … insists that Section 227(b) addresses

only calls using an Automatic Telephone Dialing System, an artificial or prerecorded voice, or a fax machine, and does not address internal do-not-call requirements. This claim is meritless."). Because a request that calls cease would revoke any prior consent, the existence of prior express consent does not provide an affirmative defense.

## IV. ARGUMENT

FMC offers three arguments in favor of dismissing this case:

(1) That the Complaint does not adequately plead absence of consent to be called; Memorandum of Law in Support of Defendant's Motion to Dismiss, Dkt. 6-1 (hereinafter "Mem.") at 6-8;

(2) That the Complaint does not adequately plead that the calls were for telemarketing purposes; Mem. at 9-10; and

(3) That the Complaint does not adequately plead that FMC used an ATDS; Mem. at 11-13.

None of these arguments justify dismissal. FMC's argument that the action should be stayed pending a ruling from the District of Columbia Circuit Court of Appeals in *ACA International, supra*, Mem. at 15-32, has been mooted by the issuance of that ruling.

### A. Standard of Review

This Court is well acquainted with the standard of review for a motion to dismiss a complaint:

> Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of her "entitle[ment] to relief," which requires more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Id.* A

> complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678

*Hart v. Medtronic, Inc.*, 2017 WL 5951698 at *2 (D.N.J. Nov. 30, 2017) (Simandle, J). As the Supreme Court and the Third Circuit have noted, a claim is plausible if it may be supported through evidence developed in discovery:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Twombly*, at [555]. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*

*Philips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555.

A complaint need not address affirmative defenses at all. Fed. R. Civ. P. 8(b)(1)(A); *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657-58 (ed Cir. 2002) ("affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)(6)."); *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) ("[T]he rules of civil procedure require a defendant to plead an affirmative defense . . . in the answer, not a motion to dismiss."). A narrow exception to this rule discussed in *Worldcom* and *Schmidt*, permitting dismissal where the Complaint or a document integral to the Complaint compels a finding that the defendant will ultimately prevail, is not present here.

**B.    Pleadings Respecting Absence of Consent Do Not Provide a Basis for Dismissal.**

Consent is an affirmative defense in a TCPA case. *Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017) (in TCPA case, "As the party claiming *Daubert's* 'prior express consent'

8

NRA would've been required to prove it at trial"); *Leyse v. Bank of America*, 804 F.3d 316, 325 (3d Cir. 2015) ("prior consent to receiving robocalls provides a defense to liability" under the TCPA). As such, the Complaint cannot be dismissed on this basis. *Worldcom, supra*; *Schmidt, supra*.

Sieleman does not plead that he provided any kind of consent to be called by FMC; rather, he alleges that he did not:

> Sieleman has never provided his telephone number directly to FMC, or requested that FMC place solicitation telephone calls to him or alert him of his services.

¶34. The Complaint plausibly explains that he had obtained a mortgage from Bell Bank (although the Complaint does not allege that he consented to be called by that entity either), which subsequently assigned certain mortgage-associated rights to FMC. ¶29. Whether FMC must ultimately prove that Sieleman provided "express consent" or "express written consent," Mem. at 6-8, need not be resolved on this motion, since Sieleman clearly pleads that he provided neither.

The consent at issue in *VanPatten v. Vertical Fitness Group*, 847 F.3d 1037 (9th Cir. 2017), cited by FMC, had little in common with the circumstances of this case. *VanPatten* was decided on summary judgment following development of a full factual record. Mem. at 9-10. The plaintiff had initiated a business transaction with the defendant[1] by purchasing a membership in a health club, had consented to be contacted by it, and later received a text asking him to renew the cancelled membership. Here, by contrast, Mr. Sieleman alleges that he never initiated any relationship with FMC; rather, FMC purchased a mortgage that he held. In addition, FMC was not seeking to renew an existing mortgage, (which was not expiring or expired) but rather, to induce

---

[1] FMC misleadingly describes that defendant as the "successor-in interest" to the business to which the Plaintiff had provided consent. Mem. at 9. The *VanPatten* Court notes that VanPatten had consented to be contacted by the same business that subsequently contacted him, although it had changed its name. *Id.* at 1046. Even if Sieleman had consented to be called by Bell Bank Mortgage when he obtained his mortgage (which is not alleged in the Complaint); he would not have consented to be called by FMC.

Sieleman to purchase an entirely new product, presumably with different terms than the existing mortgage.

The other cases FMC cites concerned debt collection calls. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1113, 1118 (11th Cir. 2014) (decided on summary judgment following development of factual record); *Gorson v. Accounts Receivable Mgmt.*, 2013 WL 4047577 at *1 (D.N.J. Aug 9, 2013). *Gorson* also relies on a regulation that has been repealed. *Id.* at *9 (citation to former 64 C.F.R. § 64.1200(a)(2)(iv)). The FCC regulatory ruling cited by FMC, Mem. at 7, also clearly distinguishes debt collection calls from telemarketing calls: "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number *regarding the debt* (emphasis added)." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 564 (Jan. 4, 2008). Sieleman alleges that the calls soliciting refinancing were not regarding the existing debt, but were an attempt to market to him a new mortgage, presumably with different material terms. ¶ 29. The only other regulatory ruling cited by FMC, *Matter of Group M, Inc. I Skype Communications*, 29 FCC Rcd. 3442 (March 27, 2014); concerns "non-telemarketing or informational text messages," *Id.* at ¶4, and does not address telemarketing claims.

C. <u>**The Complaint Properly Alleges That the Calls Were "Telemarketing"**</u>

FMC concedes that at least with respect to the "no consent" claim, whether the calls were for telemarketing purposes matters only to the scope if its affirmative defenses. Since this issue cannot justify dismissing the Complaint, the Court may simply disregard the remainder of the argument.

Nonetheless, there is no deficiency in pleading that the calls Plaintiff received were for the telemarketing purposes. *See* ¶33 ("FMC attempted to contact Sieleman in an effort to solicit his business"); ¶29 ("Plaintiff began to receive auto-dialed calls to his cellular phone, encouraging him to refinance his mortgage with FMC…"). While FMC may attempt to prove at trial that the calls were not for telemarketing purposes, it has no basis to obtain dismissal of these claims.

The TCPA regulations define "telemarketing" commonsensically:

> The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

64 C.F.R. §1200(f)(12). The Complaint properly pleads that the purpose of FMC's calls were to encourage Sieleman to purchase a new refinance agreement, and falls within this definition. That FMC had acquired rights to Sieleman's previous loan is irrelevant.

FMC's claim that it is somehow exempt from compliance with the TCPA telemarketing restrictions because it may have acquired Sieleman's telephone number when it acquired his mortgage is unsupported by regulation, precedent, or common sense. There is no exemption from TCPA compliance for telephone calls to existing customers. *Compare* 47 U.S.C. § 227(b)(1)(C)(1) (limited "established business relationship" exception to TCPA regulations for faxes; no comparable exception for telephone calls). *See also Shupe v. JP Morgan Chase*, 2012 WL 1344820 at *7 (D. Ariz. March 14, 2007) (pleading that defendant's calls were for telemarketing, not solely for debt collection purposes, precluded dismissal of complaint). Notably, FMC has not found *any* legal authority supporting the notion that lenders cannot be telemarketers. *VanPatten, supra*, Mem. at 9, does not discuss the definition of telemarketing at all, but is concerned only with the scope of a purported consent.

11

### D. Plaintiff Adequately Alleges The Use Of An Automatic Telephone Dialing System

FMC's argument that Sieleman fails to adequately allege the use of an ATDS, relevant only to the "no consent" claim, also lacks merit. There is no dispute that the Complaint correctly states the statutory definition of an ATDS, and states that the system FMC used qualifies under this definition. 47 U.S.C. § 227(a)(1); ¶ 11 (FMC's equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial those numbers). As other courts in this Circuit and throughout the country have held, a plaintiff adequately states a claim under the TCPA when he alleges the "use [of] an automatic telephone dialing system." *Abella v. Student Aid Ctr., Inc.*, 2015 WL 6599747, at *2 (E.D. Pa. Oct. 30, 2015); *see also Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 580 (D. Del. 2015) (denying motion to dismiss where the plaintiffs alleged that the defendant "used, controlled, and/or operated automatic telephone dialing systems"); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (denying motion to dismiss where plaintiff alleged "that the message was sent using an ATDS"); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247-48 (E.D. Cal. 2013) ("Plaintiff's complaint alleges both that Defendant used an automatic telephone dialing system and that Defendant's system utilized an artificial voice. . . . Either allegation is sufficient on its own to support Plaintiff's claims."). This approach simply accepts reality: It is very plausible that a large business engaged in telemarketing would use an ATDS. The Complaint easily meets this test; *see* ¶ 11. Other courts have found that complaints alleging "there was a brief and unnatural period of silence after [he] answered the call," have buttressed the allegation that an ATDS was used to meet the plausibility standard. *Douek v. Bank of America*, 2017 WL 4882492 at *2 (D.N.J. Oct. 30, 2017) (finding pleading of ATDS adequate; dismissing without prejudice on other grounds; cited by FMC, Mem. at 13); *Evans v. Nat'l Auto Div., L.L.C.*, 2016 WL 885050, at

12

*2 (D.N.J. Mar. 8, 2016, *see similarly Verde, supra*, at *2; *Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364, at *4 (S.D. Cal. June 11, 2012) (holding that plaintiffs adequately alleged the use of an ATDS where they alleged that "the calls had a delay prior to a live person speaking to Plaintiffs"); *Oliver v. DirecTV, LLC*, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015) (holding that plaintiff's allegation of a "momentary pause" was "sufficient to draw a reasonable inference that Defendant used an ATDS" render a pleading of an ATDS plausible).

Sieleman bolsters the claim that an ATDS was used with five factual allegations: that FMC has called thousands of consumers *en masse* throughout the United States; that there was silence and "dead air" when he answered the calls, ¶ 30; that a form on FMC's website (which he had not visited prior to receiving the calls) required potential customers to consent to receive autodialed calls, ¶12; that a job posting by FMC sought employees with experience in "outbound dialer functionality," ¶14-15; and that a social media post by a former employee stated that calls originate from an auto dialer, ¶16. It is plausible that FMC placed calls to Sieleman using the same equipment which its supervisors and employees use. Collectively, these allegations raise a reasonable expectation that discovery will prove that FMC used an ATDS.[2] *Phillips*, 515 F.3d at 234 ("stating ... a claim ... simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element," quoting *Twombly*, 550 U.S. at 545).

*Evans* is particularly instructive. There, as here, the plaintiff "state[d] that the calls were made using an ATDS based on 'the frequency and persistence of the calls, as well as the fact that on many of the calls, there was a brief and unnatural period of silence after [he] answered the call."

---

[2] *ACA International* does not elaborate on the definition of ATDS, although it suggests that a definition so broad that leads to an inference a smartphone is an ATDS would be "untenable." *Id.* at *7. Notably, each of the factors alleged leads to a reasonable inference that FMC's callers are not using devices similar to smartphones.

*Evans*, 2016 WL 885050, at *2. Based on these allegations, Judge Thompson held that "Defendants' use of an ATDS was sufficiently plead for purposes of [a] Motion to Dismiss." *Id.* FMC ignores this relevant case law in its motion to dismiss.

In sum, the law in this Circuit and around the country is clear that a defendant's motion to dismiss must be denied where, as here, Sieleman alleges that FMC called him using an ATDS, that there was a pause upon answering the call, and additional facts buttress the plausibility of the allegation. The out of Circuit and inapposite case law cited by FMC does not compel a different conclusion.

## V. CONCLUSION

This case has been properly pleaded, and FMC must be required to answer the Complaint and defend itself.[3]

Dated: March 19, 2018

Respectfully submitted,

/s/ Stefan Coleman
Stefan Coleman, NJ Bar No. 382009
LAW OFFICES OF STEFAN COLEMAN, P.A.
1072 Madison Ave. #1
Lakewood, NJ 08701
Telephone: (877) 333-9427
law@stefancoleman.com

Arthur Stock (*admitted pro hac*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103

*Attorneys for Plaintiff*

---

[3] If the Court finds that any part of the Complaint must be dismissed, dismissal should be without prejudice. The Complaint has not previously been amended, and there is no reason to believe that an amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Douek* at *3.

14

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel via ECF.

/s/ Arthur Stock
Arthur Stock