IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEWART SIELEMAN, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>          Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>17-13110 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Stefan Louis Coleman, Esq.
1072 Madison Avenue, Suite 1
Lakewood, NJ 08701
     -and-
Arthur Stock, Esq. (pro hac vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
     Attorneys for Plaintiff

David G. Murphy, Esq.
REED SMITH, LLP
136 Main Street, Suite 250
Princeton, NJ 08540
     -and
Travis A. Sabalewski, Esq. (pro hac vice)
REED SMITH, LLP
901 East Byrd Street, Suite 1700
Richmond, VA 23219
     Attorneys for Defendant

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

     Plaintiff Stewart Sieleman ("Sieleman" or "Plaintiff")

filed this putative class action on behalf of himself and all

others similarly situated against Defendant Freedom Mortgage Corporation ("FMC" or "Defendant"). In this matter, Plaintiff generally alleges that FMC violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., by using an automatic telephone dialing system ("ATDS") to place unsolicited telephone calls to the cellular telephones of himself and other consumers without prior express written consent. [Docket Item 1, at ¶¶ 10-11, 17.] Plaintiff further alleges that calls to his cell phone continued even after he twice requested that FMC stop calling him. [Id. at ¶ 31.]

Pending before the Court is Defendant's motion to dismiss or, in the alternative, to stay the case. [Docket Item 6.] Plaintiff filed a response in opposition to the motion [Docket Item 10], and Defendant filed a reply. [Docket Item 14]. The Court heard oral argument on July 19, 2018.

The principal issues before the Court are: (1) whether Plaintiff plausibly alleged that FMC improperly contacted him using an ATDS; and (2) whether, under the TCPA, FMC needed prior express written consent to contact Plaintiff and other consumers. For the reasons that follow, the Court finds that, accepting the allegations in the Complaint as true, Plaintiff has plausibly alleged that FMC improperly contacted him using an ATDS, and that the TCPA required Plaintiff's prior express written consent here. Accordingly, the motion to dismiss will be

denied. The Court further finds, as explained in Part IV.A, below, that a stay is not prudent at this time because, at a minimum, discovery of the nature of FMC's calling system and FMC's contacts with Plaintiff is required before any definitive legal standard under the TCPA can be applied to FMC's conduct herein.[1]

## II. BACKGROUND

Stewart Sieleman, a Minnesota resident, received a home mortgage from Bell Bank Mortgage. [Docket Item 1 at ¶¶ 23, 28.] In 2015, FMC, a company incorporated in Delaware and headquartered in Mt. Laurel, New Jersey, acquired that mortgage from Bell Bank Mortgage. [Id. at ¶¶ 24, 28.] Plaintiff alleges that "[w]ithin a few months of being informed that his mortgage was transferred to FMC, [he] began to receive auto-dialed calls to his cellular phone, encouraging him to refinance his mortgage with FMC." [Id. at ¶ 29.]

Plaintiff alleges FMC used an ATDS[2] to place the calls to his cellular phone. [Id. at ¶ 30.] Plaintiff bases this

---

[1] This Court has today also addressed a motion to dismiss and alternatively for a temporary stay in a related case, Somogyi v. Freedom Mortgage Corp., Civil No. 17-6546 (JBS/JS) (D.N.J., opinion filed August 2, 2018).

[2] The TCPA defines an "ATDS" as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As recently explained by the Second Circuit, the statutory definition of an ATDS "does

allegation on: (1) a "noticeable" and "artificial pause/delay"
that he heard on the "approximately four (4) calls" he answered;
(2) a job listing from FMC "seeking employees that have
autodialing experience"; and (3) an image from FMC's website
that "explicitly states that it may use automated technology to
contact consumers." [Id. at ¶¶ 12, 14, 30.] Plaintiff states
that the calls were made without "his prior express written
consent to FMC to place solicitation telephone calls to him."
[Id. at ¶ 34.] Plaintiff also claims that he "requested FMC stop
calling him twice." [Id. at ¶ 31.]

     The Complaint brings two causes of action: the first
alleging that FMC violated 47 U.S.C. § 227(b)(1)(A)(iii) (Count
One) [id. at ¶¶ 47-52]; and the second alleging that FMC
violated 47 U.S.C. § 227(b)(1)(B) (Count Two).[3] [Id. at ¶¶ 53-

_____

not include every smartphone or computer that might be turned
into an autodialer if properly reprogrammed, but does include
devices whose autodialing features can be activated, as the D.C.
Circuit suggested, by the equivalent of 'the simple flipping of
a switch.'" King v. Time Warner Cable Inc., 894 F.3d 473, 481
(2d Cir. 2018) (citing ACA Int'l v. Fed. Commc'n Comm'n, 885
F.3d 687, 696 (D.C. Cir. 2018) (hereinafter, "ACA
International")).

[3] At oral argument, Plaintiff's counsel argued that Count Two, a
violation of 47 U.S.C. § 227(b)(1)(B), alleges a violation of
the internal do-not-call list requirements developed by the FCC.
However, 47 U.S.C. § 227(c)(1)(A) is the relevant provision that
required the FCC, within 120 days after December 20, 1991, to
"compare and evaluate alternate methods and procedures
(including . . . industry-based or company-specific 'do not
call' systems . . .) for their effectiveness in protecting . . .
privacy rights[.]" Pursuant to that requirement, the FCC

4

59.] Plaintiff makes these allegations against Defendant on behalf of himself and all other consumers similarly situated. [Id. at ¶¶ 38-46.] As relief, Plaintiff seeks an order certifying this case as a class action, actual and statutory damages, a declaratory judgment that Defendant's actions violate the TCPA, that Defendant's telephone-calling equipment constitutes an ATDS under the TCPA, disgorgement of any ill-gotten funds acquired as a result of its unlawful telephone calling practices, injunctive relief, and reasonable attorneys' fees and costs. [Id. at ¶¶ 60-66.]

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations

---

promulgated 47 C.F.R. § 64.1200(d) which provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls[.]" Further, Section 64.1200(e), among other things, applied paragraph (d) "to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers[.]" Since Plaintiff's case deals only with calls made to cellular phones, 47 C.F.R. § 64.1200(e) is the relevant provision to allege a violation of the FCC's internal do-not-call list requirements.

omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, while disregarding unsupported conclusory statements, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

**IV. DISCUSSION**

FMC argues that the Complaint should be dismissed for two reasons. First, FMC argues Plaintiff's allegation that FMC used an ATDS is not plausible. [Docket Item 6 at 2.] Second, FMC argues the Complaint should be dismissed because any calls FMC

placed to Plaintiff did not require prior express <u>written</u>
consent under the TCPA. [<u>Id.</u> at 1.] Alternatively, at oral
argument, FMC requested a stay of this matter pending further
guidance from the FCC. The Court first addresses FMC's request
for a stay, followed by FMC's substantive arguments in turn.

### A. Stay Pending FCC Guidance

Initially, FMC requested a stay of this litigation pending
the D.C. Circuit's decision in a case involving the FCC's
interpretation of an ATDS, among other things. [Docket Item 6 at
13-29.] Before the Court decided FMC's stay request, the D.C.
Circuit issued its decision in that case, <u>ACA Int'l v. Fed.
Commc'n Comm'n</u>, 885 F.3d 687 (D.C. Cir. 2018). Two months later,
the FCC issued a Public Notice seeking comment on a variety of
issues stemming from the D.C. Circuit's decision. At oral
argument, counsel for FMC posited that the forthcoming FCC Order
could be dispositive and might be promulgated by the beginning
of 2019, and that the case should be temporarily stayed until
then. For the reasons discussed below, FMC's request for a stay
will be denied at this time.

In <u>ACA International</u>, the D.C. Circuit Court of Appeals
heard a consolidated challenge from several regulated entities
seeking, in part, a review of a 2015 FCC Order that adopted an
expansive view of what qualified as an ATDS. 885 F.3d at 691
(interpreting <u>In re Rules & Reg's Implementing the Tel. Consumer</u>

Prot. Act of 1991 ("2015 FCC Order"), 30 F.C.C. Rcd. 7961, 7974
§ 16 (June 18, 2015) ("[T]he capacity of an autodialer is not
limited to its current configuration but also includes its
potential functionalities.")). Because the breadth of the FCC's
2015 definition would render smartphones ATDSs, something
Congress clearly did not intend when enacting the TCPA, the D.C.
Circuit invalidated the FCC's 2015 definition of an ATDS. 885
F.3d at 700. The D.C. Circuit went further and criticized
portions of an FCC Report and Order from 2003 as conflicting
with the TCPA's statutory definition of an ATDS. Id. at 702-03.
FMC argues the D.C. Circuit's criticism of the 2003 Order
amounts to ACA International implicitly overruling the portions
of those FCC Orders that held "predictive dialers" to qualify as
ATDSs. [Docket Item 14 at 4.] As the Third Circuit recently
observed, however, that may not be so. See Dominguez v. Yahoo,
Inc., 894 F.3d 116 (3d Cir. June 26, 2018).[4]

Following ACA International, the FCC on May 14, 2018 issued
a Public Notice seeking comment, as relevant here, "on the
functions a device must be able to perform to qualify as an

---

[4] In Dominguez, the Third Circuit addressed the scope of the ACA
International opinion for the first time. Though the majority of
the analysis focused on "the present capacity question," the
Court indicated that the 2003 FCC Order was not overruled: "In
light of the D.C. Circuit's holding, we interpret the statutory
definition of an autodialer as we did prior to the issuance of
the 2015 [FCC Order]." Dominguez, 894 F.2d at 119.

automatic telephone dialing system." <u>Consumer and Governmental</u>
<u>Affairs Bureau Seeks Comment on Interpretation of the Telephone</u>
<u>Consumer Protection Act in Light of the D.C. Circuit's ACA Int'l</u>
<u>Decision</u>, CG Docket No. 18-152; CG Docket No. 02-278, 2018 LEXIS
1496, at *4 (May 14, 2018). Two specific terms in the TCPA
definition of an ATDS are at issue. **First**, the FCC seeks comment
on what the term "automatic" means. <u>Id.</u> The FCC has stated that
the "'basic function' of an automatic telephone dialing system
is to 'dial numbers without human intervention'" but failed to
clarify whether this is a necessary condition for a dialing
system to qualify as an ATDS. <u>Id.</u> The FCC also declared that
another "basic function" of an ATDS "was to 'dial thousands of
numbers in a short period of time[.]'" <u>Id.</u> The question then
becomes "[h]ow 'automatic' must dialing be for equipment to
qualify as an (ATDS)?" <u>Id.</u> at *5. **Second**, the FCC seeks comment
on the "random or sequential number generator" language. <u>Id.</u> at
*5-6. Specifically, since the FCC seems to offer conflicting
views: that "random or sequential number generation" is a
necessary component of an ATDS, and that dialing equipment can
still qualify "even if it lacks that capacity[,]" the question
becomes "'which is it?'" <u>Id.</u> at *6.

It is well-settled that, "[i]n the exercise of its sound
discretion, a court may hold one lawsuit in abeyance to abide
the outcome of another which may substantially affect it or be

9

dispositive of the issues." Bechtel Corp. v. Local 215,
Laborers' Intern. Union of North America, 544 F.2d 1207, 1215
(3d Cir. 1976). As the Supreme Court stated in Landis v. North
American Co., 299 U.S. 248, 254 (1936), "the power to stay
proceedings is incidental to the power inherent in every court
to control the disposition of the causes on its docket with
economy of time and effort for itself, for counsel, and for
litigants." Among the factors that courts take into account when
assessing the suitability of issuing a stay are "whether a stay
will simplify issues and promote judicial economy, the balance
of harm to the parties, and the length of the . . . stay."
Glades Pharmaceuticals, LLC v. Call, Inc., No. Civ. A. 04-4259,
2005 U.S. Dist. LEXIS 3696, at *8 (E.D. Pa. Mar. 9, 2005)
(internal quotations omitted).

Since the statutory definition of an ATDS (as opposed to
the FCC's interpretation of an ATDS) was not questioned in
either ACA International or Dominguez, the Court finds it is
unnecessary to issue a stay at the present time. Whatever
guidance the FCC may issue in the future will not alter the
statutory definition of an ATDS. In other words, telephone
dialing equipment that "has the capacity . . . to store or
produce telephone numbers to be called, using a random or
sequential number generator[]" qualifies as an ATDS today, just
as it will following any future FCC guidance. Further, the

definition of an ATDS is not relevant for purposes of Count Two alleging violations of the FCC's internal do-not-call list requirement. See supra note 3. For purposes of the instant motion, whether Plaintiff has plausibly alleged FMC contacted him using telephone dialing equipment that falls within the TCPA's statutory definition of an ATDS may be determined by applying the statute and previous FCC guidance that was not changed by ACA International. It is therefore doubtful that any new guidance issued by the FCC will be dispositive, or even simplify the issues, for purposes of deciding the present motion to dismiss.[5]

For these reasons, FMC's request for stay shall be denied.

**B.  Automatic Telephone Dialing System (ATDS) Calls to Cellular Phones**

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." Daubert v. NRA

---

[5] Moreover, as explained below, factual discovery is necessary to determine whether the particular systems and procedures alleged by Plaintiff, which lie within the literal statutory definition of an ATDS, were actually employed by FMC. Permitting discovery is also consistent with the Second Circuit's recent analysis of the ACA International decision, in which the Second Circuit held that the actual capabilities of the alleged dialing equipment must be determined with specificity on a case-by-case basis. King, 894 F.3d at 481 ("[C]ourts may need to investigate, on a case-by-case basis, how much is needed to activate a device's autodialing potential in order to determine whether it violates the TCPA."). At the conclusion of discovery, if appropriate, FMC may renew its motion for a stay if the FCC has not issued its new order or regulations in response to ACA International.

Group, LLC, 861 F.3d 382, 389 (3d Cir. 2017) (quoting Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013)). Accordingly, the TCPA provides that "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service" is a violation of the Act and the receiver of the call(s) may be entitled to injunctive relief and statutory damages. 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(3).

47 U.S.C. § 227(b)(1)(A)(iii) requires a plaintiff to prove that: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Martinez v. TD Bank USA, No. 15-7712 (JBS/AMD), 2017 U.S. Dist. LEXIS 101979, at *9-10 (D.N.J. 2017) (citations omitted). However, "[i]f a defendant, as an affirmative defense, can show that the called party provided his or her express consent, then the TCPA claim will fail." Id. at *10. A plaintiff who successfully proves the elements of a TCPA violation "may recover her 'actual monetary loss' or $500 for each violation, 'whichever is greater.' Damages may be trebled if 'the defendant willfully or knowingly violated' the Act." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016) (quoting 47 U.S.C. § 227(b)(3)).

In light of the ACA International decision, FMC argues that
this Court should focus only on the language of the TCPA, rather
than any FCC guidance, to define an ATDS. [Docket Item 14 at 5.]
The Court does so for purposes of deciding the pending motion to
dismiss.

According to FMC, it could not have contacted Plaintiff "by
chance utilizing a random or sequential number generator," as
required by the statutory definition of an ATDS, because FMC
"called Plaintiff's specific telephone number . . . to discuss
the possible refinance of Plaintiff's FMC-serviced Mortgage."
[Id. at 6.] FMC cites Trumper v. GE Capital Retail Bank, 79 F.
Supp. 3d 511 (D.N.J. 2014) to support this proposition. In
Trumper, the district court granted a motion to dismiss because
the complaint "ma[de] only conclusory allegations." 79 F. Supp.
3d at 513. Specifically, the complaint "sa[id] nothing about the
calls [plaintiff] received," and also "provide[d] no factual
allegations suggesting that that [sic] the voice on the other
end of the line was prerecorded." Id. Though the Trumper Court
went on to say, "it appears the calls were directed at
[plaintiff], who apparently has an account with [defendant]"
making it seem "that the calls were not random," this fact alone
was not sufficient to dismiss the complaint. Id. Unlike in
Trumper, the Complaint here alleges specific facts about the
calls Plaintiff received and provides factual allegations

13

plausibly suggesting the calls may have been made using an ATDS. For example, Plaintiff alleges the calls were placed for the purpose of offering him refinance services, and that when he answered, there was "a noticeable pause/delay . . . indicative of the use of an ATDS." [Docket Item 1 at ¶¶ 29, 30.] That Plaintiff is a customer of FMC is of no moment to the scope of the ATDS definition, though it may be relevant to the allegation that Plaintiff gave no express consent to such calls, discussed below.

Further, even if Plaintiff is a customer of FMC, that fact alone does not preclude FMC from impermissibly using an ATDS to contact him. Had the FCC intended, it could have extended the "established business relationship"[6] exception that applies to certain calls made to residential lines to calls made with an ATDS to cellular phones. See 7 F.C.C. Rcd. 8752, 8769-73 ¶¶ 32-39 (concluding "that the TCPA permits an exemption for established business relationship calls from the restriction on artificial or prerecorded message calls to residences."). Instead, the FCC "eliminated the established business relationship exemption for . . . calls to residential lines[.]",

_____

[6] "The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration[.]" 47 C.F.R. § 64.1200(f)(5).

<u>2012 FCC Order</u>, 27 F.C.C. Rcd. 1830, 1831 ¶ 2 (Feb. 15, 2012)
(emphasis added). Clearly then, it is possible for a company to
impermissibly call its customers using a telephone dialing
system with the "capacity . . . to store or produce telephone
numbers to be called, using a random or sequential number
generator[.]" In fact, based on Plaintiff's allegation that
after answering one of the autodialed calls, "he was transferred
to one of FMC's agents, who confirmed that [Plaintiff] was
already receiving the best rate and could not get a refinanced
mortgage[,]" it is conceivable that FMC used an ATDS to place
the initial call. In other words, it is plausible that FMC used
an ATDS to randomly or sequentially generate telephone numbers
from a list of all its existing customers because it allegedly
called a customer who did not actually qualify for the service
offered.

FMC also argues that Plaintiff has not properly pleaded the
ATDS element for other reasons. [Docket Item 6 at 11-13; Docket
Item 14 at 5-9.] Specifically, according to FMC, some of
Plaintiff's allegations of ATDS use are presented in "purely
conclusory terms," while others are not specific to calls made
to Plaintiff in this case. [Docket Item 6 at 11-12.] Though it
is axiomatic that "formulaic recitation[s] of the elements of a
cause of action will not" survive a motion to dismiss for
failure to state a claim, <u>Iqbal</u>, 556 U.S. at 678, the Court

finds that the Complaint provides more than enough factual information to support a reasonable inference that FMC used an ATDS to call Plaintiff and those similarly situated. In other words, Plaintiff's Complaint gives factual grounding to the conclusory statements of TCPA liability.

Notably, courts in this district and others have consistently held that allegations of answering multiple calls with a pause or delay prior to a person speaking are sufficient to state a claim under the TCPA. See, e.g., Todd v. Citibank, No. 16-5204-BRM-DEA, 2017 U.S. Dist. LEXIS 63402, at *17-18 (D.N.J. Apr. 26, 2017) (denying motion to dismiss, in part, where plaintiff alleged "she heard a silence before a recording began, convincing [her] . . . [d]efendant's calls were 'robo-calls'"); Carrera v. Major Energy Servs., LLC, No. 15-3208 (MAS) (LHG), 2016 U.S. Dist. LEXIS 40998, at *3-4 (D.N.J. Mar. 29, 2016) (denying motion to dismiss where plaintiff alleged "there was a brief pause before a live operator got on the line"); Richardson v. Verde Energy USA, Inc., No. 15-6325, 2016 U.S. Dist. LEXIS 175642, at *5-7 (E.D. Pa. Dec. 19, 2016) (denying motion to dismiss, in part, where plaintiffs alleged "there was silence and 'dead air' before a live person began to speak" and a "high volume of calls," which continued after plaintiffs requested that defendant stop calling); Connelly v. Hilton Grand Vacations Co., No. 12-cv-599 (KSC), 2012 U.S. Dist. LEXIS 81332,

16

at *13 (S.D. Cal. June 11, 2012) (denying motion to dismiss where plaintiffs alleged "[t]he calls had a delay prior to a live person speaking," and the court could "infer the calls were randomly generated").

As in those cases, Plaintiff here alleges that on the calls he answered "he would hear a noticeable pause/delay . . . indicative of the use of an ATDS." [Docket Item 1 at ¶ 30.] In fact, Plaintiff goes further. He alleges that the purpose of the calls was to "encourag[e] him to refinance his mortgage with FMC," that FMC sought to hire people with "autodialing experience," that a former employee alleged leads "come from an autodialer making 'ringlesss [sic] calls,'" and, most importantly, that FMC's own website "explicitly states that [it] may use automated technology to contact customers." [Id. at ¶¶ 12, 14, 16, 29.] A party who receives such calls could scarcely be required to plead more than this plausible basis for alleging that an ATDS launched the calls. The actual configuration of Defendant's calling apparatus can be explored in discovery. Indeed, at this early stage of the case, this Plaintiff has gathered significant background information regarding FMC's recruitment and employment of individuals with autodialing experience and FMC's own website information about use of autodialers to contact its customers, as alleged in the Complaint, such that Plaintiff's allegation of FMC's ATDS use

goes beyond mere speculation and guesswork. Plaintiff should thus have the opportunity to proceed and discover the facts about the FMC calling system to see whether it accorded with these allegations and ultimately violated the TCPA.

For the foregoing reasons, the Complaint alleges more than sufficient information which, if true, could establish that FMC improperly employed an ATDS to call Plaintiff and others similarly situated. The Court, therefore, finds that Plaintiff has adequately pleaded the ATDS element under the TCPA.

### C.   Prior Express Written Consent

The TCPA vests the FCC with the authority to "prescribe regulations to implement the requirements" of the Act. 47 U.S.C. § 227(b)(2). Pursuant to that authority, the FCC has determined "that it is essential to require prior express <u>written</u> consent for autodialed or prerecorded telemarketing calls to wireless numbers." <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, ("2012 FCC Order") 27 FCC Rcd. 1830, 1840 ¶ 25 (Feb. 15, 2012) (emphasis added).

FMC argues that "the 'express written consent' requirement does not apply to calls that are placed to a number which the called party provided in connection with an existing debt." [Docket Item 6 at 8.] Plaintiff, on the other hand, contends he has properly pleaded that the calls received were for "telemarketing purposes," and not "in connection with an

existing debt." [Docket Item 10 at 11.] Even assuming <u>arguendo</u>

that Plaintiff did provide his cell phone number on his loan

application with Bell Bank Mortgage years before (and Plaintiff

makes no such concession), this Court is unpersuaded by FMC's

argument because calls from a mortgage lender offering

refinancing services are not made "in connection with an

existing debt[]"; rather, for reasons next explained, calls to

customers soliciting refinance are "telemarketing" calls for a

new product requiring prior express written consent under the

TCPA.

The FCC defines "telemarketing" as "the initiation of a

telephone call or message for the purpose of encouraging the

purchase or rental of, or investment in, property, goods, or

services, which is transmitted to any person." 47 C.F.R. §

64.1200(f)(12). Further, while the FCC "require[s] prior written

consent for autodialed . . . <u>telemarketing</u> calls," oral consent

is permitted for "<u>non-telemarketing</u>, informational calls." 27

FCC Rcd. at 1841 ¶ 28 (emphasis added). Examples of non-

telemarketing, informational calls include "those by or on

behalf of tax-exempt non-profit organizations, calls for

political purposes, and calls for other noncommercial purposes,

including those that deliver purely informational messages such

as school closings." <u>Id.</u> Finally, though "calls solely for the

purpose of debt collection . . . do not constitute

telemarketing," 2008 FCC Order, 23 F.C.C. Rcd. 559, 565 ¶ 11 (Jan. 4, 2008), and are therefore not subject to the prior express written consent requirement, this exemption applies only "to the extent (the calls) do not contain telemarketing messages[.]" 2012 FCC Order, 27 F.C.C. Rcd. 1830, 1841 ¶ 28 (Feb. 15, 2012).

Though the FCC declared "that the provision of a cell phone number to a creditor . . . reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt[,]" 2008 FCC Order, 23 F.C.C. Rcd. at 564 ¶ 9, case law and other FCC provisions indicate there is a fundamental difference between debt-collection calls and calls offering refinancing.[7]

The prior express consent standard from the 2008 FCC Order applies only to calls made solely for debt-collection purposes. See Hill v. Homeward Residential, 799 F.3d 544, 552 (6th Cir. 2015) (interpreting the 2008 FCC Order to "'emphasize' that creditors can call debtors only 'to recover payment for

---

[7] Had the FCC intended for refinancing offers from a loan servicer to be considered a contact "regarding the debt[,]" the FCC would not have elaborated in its 2012 Order that calls offering refinancing by a consumer's loan servicer pursuant to the American Recovery and Reinvestment Act do not trigger the prior express written consent requirement unless "the primary motivation appears to be sending a telephone solicitation or unsolicited advertisement rather than complying with the Recovery Act." 2012 FCC Order, 27 FCC Rcd. at 1841 ¶¶ 30-31.

obligations owed,' not on any topic whatsoever") (citations omitted); <u>Mais v. Gulf Coast Collection Bureau, Inc.</u>, 768 F.3d 1110, 1122 (11th Cir. 2014) ("The 2008 FCC Ruling clarified the meaning of 'prior express consent' for all 'creditors and collectors when calling wireless telephone numbers to recover payments for goods and services received by consumers.'") (internal citations omitted); <u>Corson v. Accounts Receivable Mgmt.</u>, No. 13-01903 (JEI/AMD), 2013 U.S. Dist. LEXIS 112282 at *27 (D.N.J. 2013) (holding that plaintiff failed to state a claim where he "does not allege that [defendant's] debt-collection calls contained advertisements or telemarketing messages").

Here, the calls placed by FMC were not debt collection calls because Plaintiff was not in default on his mortgage – FMC was simply offering (new) refinancing services to Plaintiff. Therefore, the calls do not fall within the purview of the FCC's requirement "that the provision of a cell phone number to a creditor . . . reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." <u>2008 FCC Order</u>, 23 F.C.C. Rcd. At 564 ¶ 9. Rather, Plaintiff's allegation that FMC placed auto-dialed calls to his cellular phone for the sole purpose of encouraging him to refinance his mortgage falls squarely within the statutory definition of "telemarketing." Such telemarketing calls require

prior express written consent under the TCPA. 47 C.F.R. §
64.1200(f)(12); see also 2012 FCC Order, 27 FCC Rcd. 1830, 1840
¶ 25 (Feb. 15, 2012).

FMC cites Van Patten v. Vertical Fitness Grp., LLC, 847
F.3d 1037 (9th Cir. 2017) to support its argument that the
Complaint should be dismissed because FMC was not required to
obtain prior express written consent to place calls to Plaintiff
regarding the possibility of refinancing his mortgage. [Docket
Item 6 at 9.] Specifically, FMC alleges the plaintiff in Van
Patten argued he received "'telemarketing' calls that were
impermissible absent a showing of plaintiff's prior express
written consent[,]" and that "[t]he Ninth Circuit disagreed[.]"
[Docket Item 6 at 9]. However, as discussed below, the Ninth
Circuit held prior express written consent was not required on
other grounds. Thus, FMC's reliance on Van Patten is misplaced.

In Van Patten, the Ninth Circuit upheld a grant of summary
judgment in favor of the defendant. Van Patten, 847 F.3d at
1040. There, the plaintiff had joined a gym operated by the
defendant in 2009. Id. at 1040. Shortly after joining, the
plaintiff canceled his membership. Id. Nearly three years later,
the defendant began sending plaintiff text messages encouraging
him to renew his membership. Id. at 1041. The plaintiff then
filed a putative class action lawsuit alleging, among other
things, a violation of the TCPA. Id. The Ninth Circuit, relevant

to the instant case, held that "[d]efendants need not have obtained prior express written consent . . . " since "the alleged conduct here took place before" the 2012 FCC Order requiring express written consent for telemarketing calls went into effect on October 16, 2013. Id. at 1045.

FMC argues that, just "as a . . . gym may call former members on their cell phone without it being a telemarketing call and without triggering the express written consent requirement[,]" so too can FMC contact Plaintiff regarding the refinancing of his mortgage without express written consent. [Docket Item 6 at 10.] The Court disagrees. Critical to the Court's decision in Van Patten was the fact that the prior express written consent requirement for telemarketing calls was not triggered "[b]ecause the alleged conduct [t]here took place before the rule took effect on October 16, 2013[.]" Van Patten, 847 F.3d at 1045 (emphasis added). Here, on the other hand, all the alleged calls took place after FMC acquired Plaintiff's mortgage in 2015 (i.e., well after the 2012 FCC Order took effect). [Docket Item 1 at ¶¶ 24, 28.]

Plaintiff has plausibly alleged that: (1) the calls FMC placed to Plaintiff were not debt-collection calls; (2) the calls "encourage[d] the purchase . . . of services," 47 C.F.R. § 64.1200(f)(12), and therefore qualified as "telemarketing calls" requiring FMC to obtain prior express written consent from

Plaintiff to place the calls; and (3) the calls were placed after the prior express written consent requirement went into effect in October 2013. Accordingly, Plaintiff has properly pleaded that he did not provide FMC with his prior express written consent and that such written consent was required before Defendant could place the telemarketing calls soliciting refinancing his mortgage to his cell phone.

## V.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has alleged sufficient facts to plausibly state a claim under the TCPA in each of the two counts. Defendant's motion to dismiss is, therefore, denied, and FMC's application for a temporary stay pending FCC guidance post-ACA International will be denied so that appropriate discovery may proceed. The accompanying Order will be entered.


**August 2, 2018**                        **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge